UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHELLE DE ANN COX,

Plaintiff,

v.

CAROLYN W. COLVIN,

Defendant.

Case No. 15-cv-00190-JSC

**ORDER RE: PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 17 & 18

Plaintiff Michelle De Ann Cox ("Plaintiff") seeks social security benefits for a combination of physical and mental impairments, including: fibromyalgia, posttraumatic stress disorder, depression, and anxiety. (Administrative Record ("AR") 44.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment. (Dkt. Nos. 17 & 18.) Because the Administrative Law Judge ("ALJ") improperly weighed the medical evidence and erred in his credibility determination of Plaintiff, the Court GRANTS IN PART Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings.

## LEGAL STANDARD

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be

severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," the claimant can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

## ADMINISTRATIVE RECORD

Plaintiff was born on March 24, 1985. (AR 44.) She has suffered from anxiety since she was a child.[1] (AR 177.) She has additional medical conditions, including fibromyalgia, posttraumatic stress disorder, and depression. (AR 160.) Though she earned a GED, she has never had social security qualifying earnings. (AR 70, 151-52, 249.) Currently, Plaintiff is married and has three children.[2] (AR 214, 338.)

Plaintiff alleges she became disabled in January of 2007. (AR 44.) On February 13, 2012, Plaintiff filed an application for Supplemental Security Income (SSI) under title XVI of the Social Security Act.[3] (AR 12, 44.) The application was denied initially and on reconsideration. (AR 54, 71.) On August 14, 2013, a hearing was held with an ALJ during which Plaintiff and her spouse, James Dawson, testified telephonically. (AR 12, 28-43.) Following the hearing, the ALJ issued a

---

[1] In April 2012, Plaintiff completed a lay function report in which she emphasized her lifelong anxiety and sleeping problems. (AR 170-77.)

[2] The record, though somewhat unclear, reflects that Plaintiff had only one son, but cared for additional children, before she became pregnant with twins. (*See* AR 170 (Plaintiff cared for two boys, presumably her son and nephew, in April 2012), 222-23 (in 2011, Plaintiff raised four children: her son, nephew, and then-boyfriend's two children), 249 (Plaintiff lived with her son, sister, and nephew in May 2012), 395 (Plaintiff became pregnant with twins in 2013).)

[3] At the same time, Plaintiff requested that her prior claim—denied in July of 2011—be reopened. (AR 45, 206.)

2

written decision denying Plaintiff's application and finding that Plaintiff was not disabled.  (AR 9-23.)  Thereafter, the Appeals Council denied review, making the ALJ's decision final.  (AR 1-5.)  Plaintiff commenced this action for judicial review on January 14, 2015 pursuant to 42 U.S.C. § 405(g).

## I.    MEDICAL EVIDENCE

Plaintiff has seen a variety of physicians as a result of her medical conditions.  A discussion of the relevant medical evidence follows.

### A.    Medical History

Plaintiff was a regular patient at Lucerne Community Clinic from 2010 to 2013.  (AR 315-71, 389-412.)  Although her primary care physician was Dr. Robert Gardner, Plaintiff regularly saw physician assistant Joseph Geare.  (AR 34.)

Plaintiff had four visits with Dr. Gardner in 2010.  (AR 368-71.)  In September, Dr. Gardner noted that Plaintiff had cervical cancer approximately two and a half years ago, was a tobacco addict, and suffered from depression, anxiety, and perhaps arthritis.  (AR 371.)  In October, he noted that although Plaintiff tested negative for rheumatoid arthritis, she continued to have multiple joint pain, a sign of fibromyalgia.  (AR 370.)  Later that month, Dr. Gardner noted that Plaintiff's anxiety and depression continued, and that she wanted to see a psychologist before trying medication.  (AR 369.)  During her last visit in 2010, Plaintiff continued to suffer from fibromyalgia-related pain but refused to take any medication other than Vicodin, which Dr. Gardner prescribed.  (AR 368.)

In early 2011, Dr. Gardner prescribed Plaintiff Lyrica for her severe fibromyalgia pain.  (AR 367.)  Thereafter, Plaintiff reported continued improvement in her fibromyalgia symptoms, but persistent anxiety and insomnia.  (AR 365-66.)  Dr. Gardner thus prescribed Plaintiff Valium for anxiety, Lexapro for depression, Restoril for insomnia, and Nicorette gum to quit smoking.  (*Id.*)  Despite her treatment plan, Plaintiff continued to report neck pain, back pain, and trouble sleeping.  (AR 364.)  In the spring, Dr. Gardner prescribed Plaintiff Savella for her fibromyalgia-related pain because Lyrica was not covered by her insurance.  (AR 363.)  Because Plaintiff later reported that Savella was not as effective as Lyrica, Dr. Gardner increased her dosage of Savella

United States District Court
Northern District of California

3

and prescribed her Ativan, an additional medication for her anxiety, depression, and insomnia. (AR 362.)  For several months, Plaintiff reported improvement both in her fibromyalgia symptoms and mood.  (AR 357, 359.)  However, when she stopped taking her medication, her pain symptoms returned.  (AR 350, 357.)

Plaintiff regularly visited Mr. Geare throughout 2012.  During her visits, Mr. Geare usually noted that Plaintiff exhibited a pleasant affect.  (AR 320, 322, 324, 327, 329, 331, 335, 338, 340, 342, 344, 346, 348.)  In early 2012, Mr. Geare noted that Plaintiff was experiencing back pain, tenderness at the lumbar spine, popping hips, decreased flexion, and decreased extension.  (AR 346, 348.)  Mr. Geare also noted that while Plaintiff had been attending therapy sessions twice a month, her depression was not improving because she had not been taking Lexapro as prescribed. (AR 344, 346.)  In March, Plaintiff had a CAT scan at Sutter Lakeside Hospital with unremarkable results.  (AR 294-99.)

That same month, Plaintiff visited the emergency department at St. Helena Hospital and Sutter Lakeside Hospital three days in a row due to nonstop vomiting, diarrhea, nausea, fever, and chills.  (AR 227, 271.)  During those visits she reported daily marijuana and tobacco use.  (AR 228, 234.)  The treating physician noted that Plaintiff had no tenderness, a normal range of motion, and normal alignment in her back.  (AR 230, 235.)  In addition, the physician noted that Plaintiff had normal strength, no tenderness, no swelling, and no deformity in her musculoskeletal region.  (AR 230, 271.)  According to the physician, Plaintiff was alert and fully oriented, had normal motor and normal speech, was cooperative, and displayed appropriate mood and affect. (AR 230, 235, 271.)

Plaintiff returned to see Mr. Geare through the summer of 2012.  During one of her visits, Plaintiff reported panic attacks, insomnia, depression, and multiple joint pains.  (AR 338.) According to Mr. Geare, Plaintiff appeared "agitated and anxious."  (AR 335.)  Mr. Geare also noted that Plaintiff was homeless at that time, living in a motel with her two boys (presumably her son and nephew), and had difficulty taking her medication as prescribed.  (AR 335, 338.)  Later that summer, Mr. Geare noted that Plaintiff was "[d]oing better on Seroquel XR and Lyrica," but had been out of both for a few days.  (AR 331.)  Subsequently, Plaintiff reported worsened

fibromyalgia symptoms including insomnia, muscle and joint pain, and depression; however, Plaintiff was not taking Lyrica as prescribed because she was having difficulty obtaining it through her insurance.  (AR 322, 324, 327.)  During another visit in the fall, Mr. Geare similarly noted that Plaintiff was not taking other medications as prescribed.  (AR 320.)

Plaintiff continued seeing Mr. Geare in 2013.  In March, Mr. Geare noted that Plaintiff was pregnant with twins.  (AR 395.)  Prior to confirmation of pregnancy, Plaintiff was taking Ativan and Valium for her anxiety, and Lexapro and Lithium Carbonate for her depression.  (AR 390.)  Although Mr. Geare had also prescribed Plaintiff Lyrica for her fibromyalgia, her insurance denied coverage of the medication.  (AR 392.)  Once pregnant, Mr. Geare took Plaintiff off Lyrica and prescribed her Seroquel for her bipolar disorder.  (AR 393.)  Mr. Geare subsequently altered Plaintiff's treatment plan twice: first taking her off all medications except for Seroquel and Lexapro, and then exclusively prescribing Busiprone for her anxiety and Wellbutrin for her depression.  (AR 395, 400.)  Mr. Geare noted that the change in Plaintiff's treatment plan had increased her fibromyalgia symptoms, caused her to show evidence of distress, exacerbated her insomnia, and caused her to have "severe bipolar episodes."  (AR 395, 400, 403.)  Nevertheless, Plaintiff indicated that she did not want to try any further medication.  (AR 403.)

### B.    Medical Evaluations

In addition to routine and emergency medical visits, Plaintiff underwent several examinations to determine her functional capacity in support of her application for disability benefits.  Below is a summary of these evaluations.

### 1.    Examining Psychiatrist Dr. Mandelbaum

Psychiatrist Daniel Mandelbaum performed an evaluation of Plaintiff at the request of the Agency on June 7, 2011.[4]  (AR 220.)  In performing the evaluation, Dr. Mandelbaum reviewed the medical notes from Lucerne Community Clinic between October 2010 and April 2011.  (AR 221.)  Both the medical notes and Plaintiff herself indicated that she suffers from fibromyalgia and depression.  (*Id.*)  Plaintiff, however, did note that she feels less depressed when she takes

---

[4] Dr. Mandelbaum's evaluation was originally submitted in support of Plaintiff's prior claim in 2011, which, as mentioned above, Plaintiff requested the Agency to reopen.  (AR 36.)

United States District Court
Northern District of California

Lexapro.  (AR 222.)  Plaintiff also shared that she suffers from posttraumatic stress disorder and anxiety due to troubling instances throughout her childhood, such as seeing her mother overdose on methamphetamine and being sexually molested by her uncle.  (*Id.*)  Plaintiff admitted prior methamphetamine abuse, but indicated that she had been sober for nine years.  (AR 221.)  Dr. Mandelbaum diagnosed Plaintiff with amphetamine dependence in sustained full remission, depressive disorder, posttraumatic stress disorder, and psychological factors affecting physical condition.  (AR 224.)  According to Dr. Mandelbaum, Plaintiff was alert and oriented, displayed no evidence of thought blocking, and was able to subtract serial threes from 20.  (AR 223.)  However, Dr. Mandelbaum noted that Plaintiff teared up while discussing her past, appeared anxious, and had some problems with concentration.  (AR 223-24.)  Dr. Mandelbaum thus concluded that, although Plaintiff indicated that she cooked, cleaned, and grocery shopped for four children (her son, nephew, and then-boyfriend's two children), her ability to carry out most work functions would be moderately or moderately to markedly impaired.  (*Id.*)  In particular, Dr. Mandelbaum noted that Plaintiff would likely have difficulty interacting with the public, working under pressure, and concentrating.  (AR 224.)

### 2.    Therapists Mr. Bigelman and Ms. Johnson

On October 13, 2010, Plaintiff's treating physician Dr. Gardner referred Plaintiff to licensed social worker Norm Bigelman and certified social worker Deborah Johnson for psychotherapy.  (AR 242.)  Although Plaintiff attended psychotherapy sessions to address her anxiety and depression for several years, neither Mr. Bigelman nor Ms. Johnson provided treatment notes.  Instead, they wrote a letter to the Agency in support of Plaintiff's application for disability benefits on May 8, 2012 and again on July 5, 2013.  (AR 242, 413.)  In their May 2012 letter, Plaintiff's therapists found that she had "marked difficulty in the areas of social, occupational and collegiate functioning."  (AR 242.)  They also noted Plaintiff's difficulties in the "areas of interpersonal relationships, ability to trust others, self-esteem/confidence, and anxiety in stressful situations."  (AR 242-43.)  For these reasons, they found that Plaintiff had neither been successful in completing college nor obtaining gainful employment.  (AR 243.)  Although Plaintiff's therapists wrote their second letter approximately one year later, it was identical to their

May 2012 letter, the only difference being their statement that Plaintiff was pregnant with twins and thus was not taking medication for her depression.  (AR 414.)

### 3.    Examining Psychologist Dr. Cushman

Dr. Philip Cushman performed a comprehensive psychological evaluation at the request of the Agency in May 2012.  (AR 245.)  Before talking to Plaintiff, Dr. Cushman reviewed Dr. Mandelbaum's psychiatric evaluation and a two-page medical progress note from Mr. Geare.  (AR 247.)  In addition to talking about her social history, Plaintiff told Dr. Cushman about her activities of daily living.  (AR 249-50, 252.)  Plaintiff indicated that she spends most of her time at home washing dishes, preparing meals, and performing other household chores for herself and her son.  (AR 250, 252.)  Regarding her physical and mental status, Plaintiff reported that her medication and counseling sessions were helpful for her depression and anxiety, while Vicodin was helpful for her physical pain.  (AR 250-51.)  However, she noted that Savella was not helpful with her fibromyalgia pain.  (AR 250.)  She and Dr. Cushman also discussed her history of drug abuse, including her regular use of methamphetamine up until two years prior.  (AR 249.) According to Dr. Cushman, Plaintiff had a normal gait, was fully oriented, and appeared mildly anxious and guarded.  (AR 251-52.)  Dr. Cushman diagnosed Plaintiff with physical and sexual abuse and neglect of child, posttraumatic stress disorder, current cannabis dependence, cannabis-induced anxiety disorder, amphetamine dependence in partial remission, current alcohol dependence, alcohol-induced mood disorder, major depressive disorder, pain disorder, and borderline personality disorder.  (AR 252-53.)  Dr. Cushman concluded that Plaintiff was capable of both managing her own funds and performing simple and repetitive tasks, but would have difficulty with the following: attending work regularly, working a normal workday or workweek, dealing with workplace stressors, and getting along with the public.  (AR 253.)

### 4.    Non-Examining Medical and Psychological Consultants

At the reconsideration level, a medical consultant (Dr. Estrin) and psychological consultant (Dr. Jacobson) evaluated Plaintiff on behalf of the Agency.  (AR 56-71.)  Neither Dr. Estrin nor Dr. Jacobson examined Plaintiff; instead, they reviewed certain unspecified medical records.  (AR 62-66.)  Regarding Plaintiff's physical impairments, Dr. Estrin concluded that none were severe.

7

United States District Court
Northern District of California

(AR 64.)  In terms of Plaintiff's psychological impairments, Dr. Jacobson found that Plaintiff was able to: perform simple tasks; maintain regular attendance; maintain concentration, persistence, and pace for two hour periods; adapt to routine changes; and interact with coworkers.  (AR 64, 69.)  However, Dr. Jacobson also found that Plaintiff was moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the public; and respond appropriately to changes in the work setting.  (AR 68-69.)  In reaching these conclusions, Dr. Jacobson gave the greatest weight to Dr. Cushman's opinion.  (AR 67.)

### 5.    Treating Physician Dr. Gardner

Dr. Gardner, Plaintiff's treating physician from Lucerne Community Clinic, completed a "Fibromyalgia Medical Source Statement" form on March 4, 2013.  (AR 384.)  The form is a check-the-box report and provides an opportunity for brief comments, which Dr. Gardner provided throughout.  Dr. Gardner concluded that Plaintiff met the American College of Rheumatology criteria for fibromyalgia and exhibited almost every symptom of the condition, including, for example: over 20 tender points, hypersensitivity to touch, fatigue, chronic widespread pain, sleep disturbance, joint stiffness, and muscle spasms.  (*Id.*)  Dr. Gardner also noted that Plaintiff experienced sharp pain in all parts of her body and that changing weather, fatigue, movement/overuse, cold, hormonal changes, stress, sleep problems, and static position precipitated her pain.  (AR 385.)  Regarding exertional limitations, Dr. Gardner noted the following: Plaintiff could walk two city blocks without rest or severe pain; sit 10-15 minutes; stand 10-15 minutes; sit and stand/walk about two hours in an eight-hour workday; and occasionally lift less than 10 pounds.  (AR 385-86.)  With respect to postural limitations, Dr. Gardner determined that Plaintiff could only rarely crouch/squat and climb stairs, and could never twist, stoop, or climb ladders.  (AR 386.)  Dr. Gardner further indicated that Plaintiff would need to take a 20 minute unscheduled break every hour and would miss more than four days of work

1    per month.  (AR 385-86.)

2    **II.      PLAINTIFF'S ALJ HEARING**

3            On August 14, 2013, Plaintiff appeared at her hearing before ALJ David R. Mazzi ("the

4    ALJ") via video-telephone conference.[5]  (AR 30.)  Only Plaintiff and her spouse testified.  (AR

5    29.)

6            **A.      Plaintiff's Testimony**

7            Plaintiff has suffered from anxiety and sleeping problems for the majority of her life.  (AR

8    35, 37.)  Even when she takes medication for these conditions, she feels anxious and has

9    nightmares.[6]  (AR 37-38.)  Indeed, Plaintiff stresses out easily—sometimes because of certain

10   smells—and has nightmares most nights.  (AR 35, 37.)  Although Plaintiff also suffers from

11   depression, her mood has improved with the help of medication and therapy.  (AR 33, 35.)  Due to

12   her medical conditions, Plaintiff often loses her temper and wakes up feeling unrefreshed.  (AR

13   37-38.)  She therefore does not believe she could work eight hours a day.  (AR 37.)

14           In addition, Plaintiff has physical medical conditions, including fibromyalgia, which

15   causes pain in her neck, back, knees, arms, and hands.  (AR 39.)  As a result, she has trouble

16   sitting and standing.  (AR 39-40.)  Plaintiff takes medication to dull the pain, but she prefers not

17   to.  (AR 39.)

18           Plaintiff was pregnant at the time of her hearing.  (AR 31.)  During her pregnancy, Plaintiff

19   did not take medication for fibromyalgia.  (AR 33.)  She continued to take medication for anxiety

20   and depression, but switched types of medication.  (*Id.*)

21           Although Plaintiff did not testify to her activities of daily living, she discussed them in a

22   statement and a function report she submitted before her hearing.  (AR 170-77, 211-14.)  In those

23   _____

24   [5] Although the hearing transcript indicates that Plaintiff appeared via video-telephone conference,
     several other pages in the administrative record refer to Plaintiff's hearing only as a telephone
25   conference.  (*See, e.g.*, AR 31, 112.)  Notwithstanding this discrepancy, it is clear that the ALJ
     excused Plaintiff's personal appearance and she testified from her representative's office in
26   Lakeport, CA because of the distance between her residence in Clearlake, CA and the Office of
     Disability Adjudication and Review in San Rafael, CA.  (AR 12, 31, 206.)

27   [6] In her function report, Plaintiff seems to attribute her anxiety and insomnia to the drug addiction
     and sexual molestation she was exposed to at a young age.  (AR 211.)
28

United States District Court
Northern District of California

documents, Plaintiff reported that she has difficulty performing household chores due to her fibromyalgia.  (AR 211.)  Nevertheless, she is able to prepare meals, put her son and nephew to bed, do laundry, and wash dishes.  (AR 170, 172, 214.)

**B.     Spouse's Testimony[7]**

At the time of his testimony, Mr. Dawson had known Plaintiff for at least two years.[8]  (AR 41.)  Mr. Dawson reported that Plaintiff has constant anxiety attacks, even when she takes her medication.  (AR 40-41.)  During these attacks she screams, swings, and kicks.  (AR 40.)  Because her "triggers are like a roll of dice," Mr. Dawson constantly has to be on his guard.  (AR 40-41.)

**C.     ALJ's Findings**

On September 25, 2013, the ALJ performed the five-step disability analysis and found Plaintiff not disabled under Section 1614(a)(3)(A) of the Social Security Act.  (AR 12-23.)  At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity after her application date of February 13, 2012.  (AR 14.)  At the second step, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, bipolar disorder, posttraumatic stress disorder, generalized anxiety disorder, and borderline personality disorder.  (AR 14-15.)

At the third step, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 15-16.)  The ALJ considered both Plaintiff's mental and physical impairments.  (*Id.*)  Regarding Plaintiff's mental impairments, the ALJ considered the following listings: 12.04 (Affective Disorders), 12.06 (Anxiety-Related Disorders), and 12.08 (Personality Disorders).  (AR 15.)  The ALJ found Plaintiff mildly limited in daily living activities, citing her independence with personal care, grocery shopping, preparing meals, and caring for her son and nephew, even though she needed reminders to take her medication and encouragement to complete

---

[7] In April 2012, Plaintiff's sister, Lynda-Nicole Swenney, submitted a lay function report that contained similar information as in Plaintiff's and her spouse's testimony.  (AR 181-88.)

[8] Mr. Dawson also submitted a statement, which was consistent with his testimony.  (AR 214.)  Because his statement is not dated, however, and there is no other information regarding their marriage, it is not possible to determine when he married Plaintiff.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   housework.  (*Id.*)  The ALJ found that Plaintiff was moderately limited in social functioning,

2   noting that although Plaintiff is often irritable, she married Mr. Dawson after her alleged onset

3   date and regularly socializes.  (*Id.*)  Lastly, the ALJ found that Plaintiff had mild to moderate

4   difficulties with concentration, persistence, or pace and had experienced no episodes of

5   decompensation.  (AR 15-16.)  With respect to Plaintiff's physical impairments, the ALJ found

6   that no listed impairment corresponded with fibromyalgia and, in any event, neither the record nor

7   any medical source supported a finding that Plaintiff's fibromyalgia medically equaled a listed

8   impairment in accordance with Social Security Ruling ("SSR") 12-2p.  (AR 16.)

9        At the fourth step, the ALJ found that Plaintiff had no past relevant work, but nonetheless

10  retained the Residual Functional Capacity ("RFC") to perform at least light work and was able to

11  sustain simple, repetitive, tasks, equating to unskilled work with occasional public interaction.

12  (AR 17, 22.)  While the ALJ found that Plaintiff's medically determinable impairments could

13  reasonably be expected to cause some of her alleged symptoms, her testimony about the "intensity,

14  persistence, and limiting effects" of her symptoms was not entirely credible.  (AR 17.)

15       Regarding Plaintiff's mental impairments, the ALJ found that the objective medical record

16  did not support Plaintiff's disability claims because Plaintiff "generally displayed essentially

17  unremarkable findings on mental status examinations."  (*Id.*)  He gave significant weight to an

18  unnamed state agency psychologist's opinion (presumably Dr. Jacobson's) because that

19  psychologist "reviewed substantial portions of the medical evidence."  (AR 20.)  He gave little

20  weight to Mr. Bigelman's and Ms. Johnson's assessment because, as therapists, they are not

21  "medically acceptable sources" and their assessment was "inconsistent with the balance of medical

22  evidence."[9]  (*Id.*)  Similarly, the ALJ gave little weight to Dr. Mandelbaum's assessment and Dr.

23  Cushman's assessment, crediting only Dr. Cushman's finding that Plaintiff could perform simple,

24  repetitive, tasks.  (AR 21.)

25       As for Plaintiff's physical impairments, the ALJ gave little weight to Dr. Gardner's

26

27  _____

    [9] The ALJ also gave little weight to the opinion of an unnamed state agency psychologist at the

28  initial level, but Plaintiff does not dispute the ALJ's decision to do so.  (AR 20.)

1    assessment given its inconsistency with Mr. Geare's treatment plan and Plaintiff's positive

2    response to treatments.[10]  (*Id.*)  The ALJ further discredited Dr. Gardner's opinion because it was

3    inconsistent with the medical record as a whole and Dr. Gardner mistakenly identified "over 20"

4    fibromyalgia tender points even though the American College of Rheumatology acknowledges

5    only 18 tender points.  (AR 22.)

6            With respect to Plaintiff's own testimony, the ALJ found that Plaintiff's allegations of

7    disabling symptoms and work-preclusive limitations were inconsistent with the medical record as

8    a whole.  (AR 19.)  For instance, Plaintiff complained of worsening symptoms while at the same

9    time refusing or forgetting to take her prescribed medications "despite her acknowledgement of

10   benefit from such" medications.  (AR 18.)  In addition, the ALJ discredited Plaintiff's testimony

11   because of her inconsistent statements regarding her past substance abuse and her ability to

12   perform daily activities such as grocery shopping, preparing meals, and performing household

13   chores.  (AR 19.)

14           Regarding third party testimony, the ALJ gave little weight to the opinions of Plaintiff's

15   spouse and sister.  (AR 20.)  The ALJ was not persuaded by Plaintiff's spouse because his

16   testimony regarding Plaintiff's day-to-day activities was more limiting than those reported by

17   Plaintiff.  (*Id.*)  Similarly, the ALJ found Plaintiff's sister's statements only partially credible

18   because they were largely similar to Plaintiff's.  (*Id.*)

19           At the fifth step, the ALJ found that there were jobs that existed in significant numbers in

20   the national economy that Plaintiff could perform.  (AR 22.)  Although Plaintiff had nonexertional

21   limitations—given that she was limited to occasional public interaction and simple, repetitive,

22   tasks—the ALJ concluded that these limitations "have little effect on the light unskilled

23   occupational base," of which Plaintiff could meet the basic demands.  (AR 23.)  Therefore, the

24   ALJ found that Plaintiff was not disabled.  (*Id.*)

25

26

27   ──────────────────────
     [10] The ALJ similarly gave little weight to the opinions of unnamed state agency physicians at the
28   initial and reconsideration levels, but, as mentioned above, Plaintiff does not dispute the ALJ's
     decision to do so.  (AR 22.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court has authority to review an ALJ's decision to deny benefits.  When exercising this authority, however, the "Social Security Administration's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The Ninth Circuit defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; it is "more than a mere scintilla, but may be less than a preponderance."  *Molina*, 674 F.3d at 1110-11 (internal citations and quotation marks omitted); *Andrews*, 53 F.3d at 1039.  To determine whether the ALJ's decision is supported by substantial evidence, the reviewing court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal citations and quotation marks omitted); *see also Andrews*, 53 F.3d at 1039 ("To determine whether substantial evidence supports the ALJ's decision, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.").

Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are roles reserved for the ALJ.  *See Andrews*, 53 F.3d at 1039; *Magallanes*, 881 F.2d at 750.  "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citations and quotation marks omitted); *see also Batson v. Comm'r*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion.").  "The court may not engage in second-guessing."  *Tommasetti*, 533 F.3d at 1039.  "It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the Commissioner's determination as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, not the Court's, to resolve conflicts in the evidence."  *Bertrand v. Astrue*, No. 08–CV–00147–BAK, 2009 WL 3112321, at *4 (E.D. Cal. Sept. 23, 2009).

United States District Court
Northern District of California

**DISCUSSION**

On appeal, Plaintiff contends that the ALJ: (1) erred in finding that Plaintiff did not equal a listing due to fibromyalgia at step three; (2) erred in determining Plaintiff's RFC at step four; and (3) failed to meet his burden at step five.  As discussed in detail below, the Court concludes that the ALJ erred at the fourth step, and thus does not consider Plaintiff's argument regarding the ALJ's burden at the fifth step.

**I.    STEP THREE: THE ALJ'S REJECTION OF A LISTING FOR FIBROMYALGIA**

Plaintiff argues that the ALJ erred at the third step by finding that her fibromyalgia, separately or in combination with other impairments, did not medically equal a listing.  "If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled at step three, and the ALJ need not make any specific finding as to his or her ability to perform past relevant work or any other jobs." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)).  The claimant, that is Plaintiff, bears the burden of proving that she satisfied the listing.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

A claimant, however, cannot *meet* a listing due solely to her fibromyalgia because fibromyalgia is not a listed impairment.  SSR 12-2p, 2012 WL 3104869, at *6 (July 25, 2012).  At step three, therefore, the ALJ determines whether the claimant's fibromyalgia, separately or in combination with other impairments, medically *equals* a listing.  *Id.*  "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment, or, if a claimant's impairment is *not* listed, then to the listed impairment most like the claimant's impairment." *Tackett*, 180 F.3d at 1099 (internal quotations omitted) (emphasis in original); 20 C.F.R. § 404.1526.

Here, the ALJ addressed the relevant listings for Plaintiff's severe mental impairments, including 12.04 (Affective Disorders), 12.06 (Anxiety-Related Disorders), and 12.08 (Personality Disorders), and found that the required criteria was not satisfied.  (AR 14-16.)  Plaintiff argues that in doing so, the ALJ failed to consider her fibromyalgia; in other words, she insists that because

14

the ALJ found her fibromyalgia to be a severe impairment at step two, he was required to specifically address it at step three alongside Plaintiff's severe mental impairments.  Plaintiff, however, does not specifically identify which particular listing she believes her impairments satisfied or how her condition is of medical equivalency.

At the administrative level, Plaintiff contended that she "may not meet or equal any listing."  (AR 208.)  Similarly, Plaintiff's Motion for Summary Judgment neither identifies the particular listing she believes her impairment equals, nor offers any analysis that purports to compare her condition to that described in a particular listing.  Rather, the motion merely argues that Plaintiff has a medically determinable impairment of fibromyalgia.[11]  Plaintiff nevertheless contends that the ALJ erred in finding that she did not equal a listing due to her fibromyalgia.

Because Plaintiff does not point to any listing, address the standards for meeting that listing, or cite to any evidence in the record to support a finding that she satisfied that listing, she has not shown that the ALJ's alleged error affected her substantial rights or resulted in prejudice. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected [her] 'substantial rights,' which is to say, not merely [her] procedural rights."); *see also Kennerson v. Colvin*, No. ED CV 14–01290– DFM, 2015 WL 3930167, at *2 (C.D. Cal. June 25, 2015) (denying reversal or remand based on the ALJ's alleged error to consider Listing 14.09D because the plaintiff did not compare her condition to that described in the listing, and thus did not satisfy her burden of showing that the alleged error affected her substantial rights).  Accordingly, the ALJ's decision at step three was not in error.  *See Erickson v. Colvin*, No. 2:13–cv–1061–EFB, 2014 WL 4925256, at *3 (E.D. Cal. Sept. 30, 2014) (finding that the ALJ did not err at step three because the plaintiff neither

---

[11] Plaintiff conflates steps two and three of the five-step sequential analysis.  Plaintiff relies on the 1990 and 2010 guidelines set forth in SSR 12-2p to argue that the ALJ mistakenly applied only the 1990 guidelines to conclude that Plaintiff's fibromyalgia did not medically equal a listed impairment.  The guidelines Plaintiff relies on, however, are only relevant to the ALJ's determination at step two: whether Plaintiff has a medically determinable impairment of fibromyalgia.  SSR 12-2p, 2012 WL 3104869, at *2-*3, *5.  Using the 1990 guidelines, the ALJ concluded that Plaintiff has a medically determinable impairment of fibromyalgia.  (AR 14, 18.)  In contrast, the discussion here focuses on the ALJ's determination at step three: whether Plaintiff's fibromyalgia medically equals a listed impairment.  *See* SSR 12-2p, 2012 WL 3104869, at *6.

1   identified the particular listing she believed her fibromyalgia medically equaled nor compared her

2   condition to that described in the listings).

## II.   STEP FOUR: THE ALJ'S RFC DETERMINATION

4        The "Medical-Vocational Guidelines" of the Social Security regulations define RFC as

5   "the maximum degree to which the individual retains the capacity for sustained performance of the

6   physical-mental requirements of jobs."  20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c).  It is

7   essentially a determination of what the claimant can still do despite her physical, mental, and other

8   limitations.  *See* 20 C.F.R. § 404.1545(a).  "In determining a claimant's RFC, an ALJ must

9   consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence,

10  and the effects of symptoms, including pain, that are reasonably attributed to a medically

11  determinable impairment."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)

12  (internal citations and quotation marks omitted); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

13       The ALJ found that Plaintiff had the RFC to perform at least light work and was able to

14  sustain simple, repetitive, tasks, equating to unskilled work with occasional public interaction.

15  (AR 17.)  In doing so, Plaintiff argues that the ALJ (1) erred in his consideration of the medical

16  evidence, and (2) failed to provide a sufficient basis to discredit Plaintiff's and her spouse's

17  testimony.

### A.   The ALJ's Consideration of the Medical Evidence

19       Plaintiff challenges two aspects of the ALJ's consideration of the medical evidence: the

20  ALJ's alleged (1) failure to properly develop the record and (2) error in evaluating the medical

21  opinions in the record.

#### 1.   The Standard for Weighing Medical Evidence

23       As a threshold matter, the ALJ must consider all medical opinion evidence.  *Tommasetti*,

24  533 F.3d at 1041 (citing 20 C.F.R. § 404.1527(b)).  However, the Ninth Circuit has "developed

25  standards that guide [its] analysis of an ALJ's weighing of medical evidence."  *Ryan v. Comm'r of*

26  *Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  A reviewing court must "distinguish among the

27  opinions of three types of physicians: (1) those who treat the claimant (treating physicians);

28  (2) those who examine but do not treat the claimant (examining physicians); and (3) those who

United States District Court
Northern District of California

neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Each type of opinion is accorded a different level of deference: "the opinion of a treating physician is . . . entitled to greater weight than that of an examining physician, [and] the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Courts afford treating physicians' medical opinions superior weight because these physicians are in a better position to know plaintiffs as individuals, and because the continuity of their treatment improves their ability to understand and assess an individual's medical concerns. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Thus, if a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence. *See Ryan*, 528 F.3d at 1198. The ALJ should assign "controlling weight" to a treating doctor's opinion where medically approved diagnostic techniques support the opinion and it is consistent with other substantial evidence. *See* 20 C.F.R. § 404.1527(d)(2); *Orn*, 495 F.3d at 623-33.

To determine which medical opinion should control, an ALJ looks to factors including the length of the treatment relationship, frequency of examination, nature and extent of treatment relationship, consistency of opinion, evidence supporting the opinion, and the doctor's specialization. *See* 20 C.F.R. § 404.1527(d)(2)-(d)(6). If the ALJ rejects a treating or examining doctor's opinion that is contradicted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). In contrast, "[w]hen an ALJ does not explicitly reject a medical opinion or set forth specific legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759

United States District Court
Northern District of California

1    F.3d at 1012-13 (internal citation omitted).

2         Notably, "[i]f the ALJ thought he needed to know [more about] the basis of [the doctor's]

3    opinions in order to evaluate them, he ha[s] a duty to conduct an appropriate inquiry, for example,

4    by subpoenaing the physician[ ] or submitting further questions to [him]." *Smolen v. Chater*, 80

5    F.3d 1273, 1288 (9th Cir. 1996).

6         **2.    Analysis**

7         **a.    The ALJ Was Not Required to Further Develop the Record**

8         Plaintiff first contends that the ALJ erred by rejecting Dr. Gardner's opinion regarding

9    Plaintiff's physical limitations without contacting him for further explanation.

10        When an ALJ determines that there is insufficient support in the record to make a

11   determination regarding whether a claimant is disabled, regulations impose a duty of further

12   inquiry.  Specifically, Social Security regulations provide in relevant part:

> Recontacting medical sources.  When the evidence we receive from
> your treating physician or psychologist or other medical source is
> *inadequate* for us to determine whether you are disabled, we will
> need additional information to reach a determination or a decision.
> To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or
> other medical source to determine whether the additional
> information we need is readily available.  We will seek additional
> evidence or clarification from your medical source when the report
> from your medical source contains a *conflict or ambiguity* that must
> be resolved, the report does not contain all the necessary
> information, or does not appear to be based on medically acceptable
> clinical and laboratory diagnostic techniques.

20   20 C.F.R. § 416.912(e) (emphasis added).  "The evidentiary standard [set forth in this regulation]

21   calls on the Commissioner to recontact a claimant's treating doctors if the medical evidence is

22   *inadequate* for the ALJ to determine disability." *Madrigal v. Astrue*, No. C 09–04608 RS, 2011

23   WL 765683, at *7 (N.D. Cal. Feb. 25, 2011) (emphasis in original); *see also Bayliss v. Barnhart*,

24   427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor only if the doctor's

25   report is ambiguous or insufficient for the ALJ to make a disability determination.").  In contrast,

26   the duty to recontact is not triggered where the medical record as a whole contains sufficient

27   evidence for the ALJ to make a disability determination, notwithstanding that the treating

28   physician's opinion may lack support. *See Madrigal*, 2011 WL 765683, at *7 ("Here, with

United States District Court
Northern District of California

18

support in the record, the ALJ found the evidence was adequate to make a determination regarding [the plaintiff's] disability. There is nothing that indicates otherwise. Accordingly, the ALJ did not have a duty to recontact [the treating physicians.]"); *Lester v. Astrue*, No. CV 09–7910–JEM, 2010 WL 5348610, at *5 (C.D. Cal. Dec. 21, 2010) (holding that the ALJ had no duty to recontact a treating physician when "[t]he ALJ found [the treating physician's] opinion was lacking in clinical support, but he did not find that the record as a whole was inadequate to reach a decision" as to the plaintiff's disability).

Here, there is no indication in the ALJ's written opinion or in the transcript that he denied Plaintiff benefits based on his belief that the record was inadequate or ambiguous. First, Plaintiff's record is replete with treatment notes, consultative examination reports, the state agency assessment, and lay statements and testimony. Indeed, the ALJ stated that the record was "fairly extensive" several times during Plaintiff's hearing and did not suggest that his conclusions were based on an absence of evidence. (AR 32, 34, 35.) Second, the ALJ also did not suggest that the treating physician's opinion was ambiguous or vague such that it triggered the recontact requirement. Rather, the ALJ found that Dr. Gardner's opinion was not supported by his treatment records—which indicated conservative treatment, effective response to medication, and relatively normal physical examination findings—and the medical record as a whole. (AR 21-22.) The ALJ rejected Dr. Gardner's opinion because it was not supported by the medical evidence as a whole, not because Dr. Gardner's opinion was in some way unclear; thus, the ALJ had no duty to recontact Dr. Gardner under Section 416.912(e).

### b.      The ALJ's Evaluation of the Medical Opinions

Plaintiff next contends that the ALJ erred by according little or no weight to Dr. Gardner's, Dr. Mandelbaum's, Dr. Cushman's, and Plaintiff's therapists' opinions, and instead giving greater weight to the opinion of an unnamed state agency psychological consultant (presumably Dr. Jacobson). Plaintiff alleges that as a result the ALJ overstated Plaintiff's abilities in formulating her RFC. The Court addresses each medical opinion in turn and concludes that the ALJ improperly weighed Dr. Gardner's, Dr. Mandelbaum's, Dr. Cushman's, and Dr. Jacobson's opinions.

United States District Court
Northern District of California

United States District Court
Northern District of California

i.      ***Treating Physician Dr. Gardner***

Dr. Gardner diagnosed Plaintiff with fibromyalgia due to her 20 tender points, hypersensitivity to touch, fatigue, chronic widespread pain, sleep disturbance, joint stiffness, and muscle spasms.  (AR 384.)  He concluded that Plaintiff would need to take a 20 minute unscheduled break every hour and would miss more than four days of work per month.  (AR 385-86.)

The ALJ gave little weight to Dr. Gardner's opinion for two reasons: first, that Dr. Gardner's conclusions were unsupported by his treatment records, and second, that they were unsupported by the medical record as a whole.  (AR 21.)  Because the ALJ did not cite a contradicting medical opinion, his reasons for rejecting Dr. Gardner's opinion must be clear and convincing.  *See Ryan*, 528 F.3d at 1198.  They are not.

The ALJ found that Dr. Gardner's opinion did not have support in his treatment records because the records indicated conservative treatment, effective response to medication, and relatively normal physical examination findings.[12]  (AR 21.)  While this may constitute a clear and convincing reason for rejecting a medical opinion, before rejecting a medical opinion an ALJ must do more than merely "identify conflicting evidence."  *Compare Bayliss*, 427 F.3d at 1216 (holding that contradictions between a physician's opinion and that physician's own treatment notes was a clear and convincing reason), *with Long v. Colvin*, No. 13-CV-05716-SI, 2015 WL 971198, at *6 (N.D. Cal. Mar. 3, 2015) (requiring ALJ to "provide [his] interpretation [of the conflicting evidence], and explain why [his] interpretation, rather than the . . . physician's, prevails").  Thus, the ALJ's reasoning is unpersuasive because he failed to specifically identify evidence of Plaintiff's conservative treatment, positive response to treatment, and unremarkable physical examination findings.[13]  *See Long*, 2015 WL 971198, at *6.  What is more, the ALJ failed to

---

[12] The ALJ stated that Dr. Gardner's opinion was inconsistent with "Mr. Geare's treatment plan."  (AR 21.)  Given that Dr. Gardner and Mr. Geare both saw Plaintiff and prescribed her medication between 2010 and 2013, the Court refers to the treatment plan as Dr. Gardner's and analyzes it as an internal, rather than external, inconsistency.  (*See* AR 352-55.)

[13] Although the Commissioner cites to evidence of Plaintiff's conservative treatment, positive response to treatment, and unremarkable physical examination findings, the Court may consider only the factual assertions in the ALJ's opinion.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d

1  explain why Plaintiff's treatment plan, response to it, and physical examination findings

2  contradicted Dr. Gardner's opinion that Plaintiff would regularly miss work due to her

3  fibromyalgia.  He therefore erred in finding Dr. Gardner's opinion internally inconsistent on these

4  bases.  *See id.*

5        The ALJ also found Dr. Gardner's opinion internally inconsistent because Dr. Gardner

6  noted that Plaintiff had "'over 20' fibromyalgia tender points" even though "the American College

7  of Rheumatology acknowledges the presence of only 18 tender point sites."  (AR 22 (citing SSR

8  12-2p).)  While it is true that fibromyalgia requires only 11 out of 18 tender points under the 1990

9  criteria, some physicians might consider more than 18 tender points.  *See, e.g.*, *Anderson v.*

10  *Comm'r of Soc. Sec. Admin.*, No. SACV 11–01820 AJW, 2013 WL 440703, at *6 (C.D. Cal. Feb.

11  5, 2013) (noting that the physician used a 21-tender point evaluation for diagnosis of

12  fibromyalgia).  However, "[w]here evidence is susceptible to more than one rational interpretation,

13  it is the ALJ's conclusion that must be upheld."  *Burch*, 400 F.3d at 679 (internal citation omitted).

14  The ALJ thus did not err in finding Dr. Gardner's opinion internally inconsistent in this regard.

15  On balance, however, the ALJ erred in concluding that Dr. Gardner's opinion was internally

16  inconsistent because he failed to specifically identify evidence of—and failed to explain how Dr.

17  Gardner's opinion was contradicted by—Plaintiff's conservative treatment, positive response to

18  treatment, and unremarkable physical examination findings.

19        The ALJ's second reason for discounting Dr. Gardner's opinion—that it was inconsistent

20  with the record as a whole—is likewise unpersuasive.  "The ALJ is responsible for resolving

21  conflicts in medical testimony, and resolving ambiguity."  *Morgan v. Comm'r of Soc. Sec. Admin.*,

22  169 F.3d 595, 603 (9th Cir. 1999) (internal citation omitted).  "Determining whether

23  inconsistencies are material (or in fact inconsistencies at all) . . . falls within this responsibility."

24  *Id.*  If an ALJ determines that a treating physician's opinion is inconsistent with the medical

25  record, he must directly identify and discuss those records.  *See Cotton*, 799 F.2d at 1408.  Here,

26

27      1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to
review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not

28  *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

United States District Court<br>Northern District of California

United States District Court
Northern District of California

1    the ALJ failed to identify and discuss such records, and instead stated only that Dr. Gardner's

2    opinion was "inconsistent with the medical evidence of the record as a whole."  (AR 22.)  This is

3    insufficient.  *See Cotton*, 799 F.2d at 1408; *see also Long*, 2015 WL 971198, at *6.

4           Moreover, the ALJ's reason is not clear and convincing, or even specific and legitimate,

5    because he did not consider any of the factors relevant to determining which medical opinion(s)

6    should control (the treatment relationship, frequency of examination, nature and extent of

7    treatment relationship, evidence supporting the opinion, and the doctor's specialization).  *See* 20

8    C.F.R. § 404.1527(c)(2)-(c)(6).  Had he engaged in this analysis, the following facts may have

9    tipped the scale in favor of giving controlling weight to Dr. Gardner's opinion: that Dr. Gardner

10   treated Plaintiff monthly for three years; that Dr. Gardner altered Plaintiff's treatment plan various

11   times throughout the years; and that Dr. Gardner was familiar with both Plaintiff's mental and

12   physical impairments.

13          Because the ALJ failed to support his conclusion that Dr. Gardner's opinion was

14   inconsistent with his treatment notes and the record as a whole with substantial evidence, he erred

15   in assigning Dr. Gardner's opinion little weight.  *See Ryan*, 528 F.3d at 1198 (holding that the ALJ

16   must provide clear and convincing reasons, based on substantial evidence in the record, for

17   rejecting a treating physician's opinion, unless he cites a contradicting medical opinion).

18          ii.    ***Examining Psychiatrist Dr. Mandelbaum***

19          Dr. Mandelbaum concluded that Plaintiff's ability to carry out most work functions would

20   be moderately or moderately to markedly impaired.  (AR 223-24.)  In particular, Dr. Mandelbaum

21   noted that Plaintiff would likely have difficulty interacting with the public, working under

22   pressure, and concentrating.  (AR 224.)

23          The ALJ assigned little weight to Dr. Mandelbaum's psychiatric evaluation because (1) his

24   review of Plaintiff's medical records was limited, (2) his opinion was internally inconsistent,

25   (3) he failed to phrase his opinion in "vocationally relevant terms," and (4) his opinion was

26   inconsistent with the medical record as a whole.  (AR 21.)  "[T]he opinion of an examining doctor,

27   even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that

28   are supported by substantial evidence in the record."  *Lester*, 81 F.3d at 830-31 (internal citation

omitted).  "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight . . . even if it does not meet the test for controlling weight."  *Garrison*, 759 F.3d at 1012 (internal citation and quotation omitted).  The Court addresses each basis for rejecting Dr. Mandelbaum's opinion in turn and concludes that although the first basis is specific and legitimate, it is insufficient standing alone.

First, the ALJ correctly noted that Dr. Mandelbaum was not familiar with the entire record. The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion, *see* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6); however, it is but one factor the ALJ can consider in weighing a medical opinion.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Boghossian v. Astrue*, No. CV 10–7782–SP, 2011 WL 5520391, at *4 (C.D. Cal. Nov. 14, 2011) (stating that a limited review of the record is not sufficient by itself to reject a treating physician's opinion).  Indeed, "the opinion's supportability, consistency with the record, and other relevant factors may warrant giving weight to that opinion despite the absence of medical records for review."  *Pyle v. Colvin*, No. SACV 12–2058 AJW, 2014 WL 1029845, at *7 (C.D. Cal. Mar. 14, 2014).

Here, Dr. Mandelbaum reviewed approximately six months of Plaintiff's medical records. (AR 221.)  Although Dr. Mandelbaum's review was limited, it did include all medical records available at the time, as he evaluated Plaintiff in support of her prior claim for disability benefits. (AR 21, 45.)  The bulk of the medical evidence post-dates Dr. Mandelbaum's opinion; thus, it is not that Dr. Mandelbaum's review was improperly narrow, but rather, that he reviewed all the medical evidence in existence at the time.  Standing alone, this is an insufficient reason to reject Dr. Mandelbaum's opinion.  *See Boghossian*, 2011 WL 5520391, at *4 (a limited review of the record is not sufficient by itself to reject a treating physician's opinion).

Second, the ALJ erred in stating Dr. Mandelbaum's opinion was inconsistent.  The ALJ deemed Dr. Mandelbaum's opinion internally inconsistent because he concluded that Plaintiff was moderately to markedly impaired in nearly all work-related areas, even though she had unremarkable thought content, intact serial three exercises, and an adequate fund of knowledge.

United States District Court
Northern District of California

1  (AR 21.)  As noted above, an ALJ must do more than merely "identify conflicting evidence."

2  *Long*, 2015 WL 971198, at *6.  Here, not only did the ALJ fail to provide his own interpretation of

3  the evidence, he failed to specifically cite which work-preclusive limitation(s) were contradicted

4  by Dr. Mandelbaum's observations.  The ALJ's rationale thus fails for the same reason that it

5  failed with regard to Dr. Gardner.  The ALJ stated that Dr. Mandelbaum's "findings of an anxious

6  affect and difficulties recalling objects after a five minute delay, but unremarkable thought

7  content, intact serial three exercises, and an adequate fund knowledge" did not support his

8  conclusion that Plaintiff would experience work-preclusive limitations.  (AR 21.)  But the ALJ did

9  not explain why, and the why is not obvious.  A finding that Plaintiff had an anxious affect and

10  difficulty recalling objects would support work-preclusive limitations.  That Plaintiff also

11  demonstrated unremarkable thought content, intact serial three exercises, and an adequate fund of

12  knowledge does not necessarily undermine Dr. Mandelbaum's conclusions that she was

13  moderately to markedly impaired in her ability to interact appropriately with the public,

14  supervisors, and coworkers, and her ability to respond appropriately to work pressures in a usual

15  work setting.  (*See* AR 223-24.)  Consequently, the ALJ's bare conclusion that Dr. Mandelbaum's

16  findings were internally inconsistent is not based on substantial evidence in the record and

17  therefore cannot serve as a specific, legitimate reason to discount his opinion.

18      Third, the ALJ's finding that Dr. Mandelbaum did not phrase his opinion in "vocationally

19  relevant terms" is unclear and, in any event, incorrect.  As the ALJ failed to provide a single

20  example in which Dr. Mandelbaum did not phrase his opinion in "vocationally relevant terms,"

21  the Court cannot tell what the ALJ relied on in discounting Dr. Mandelbaum's opinion.  (*See* AR

22  21.)  Moreover, Dr. Mandelbaum used similar terms as those used by Dr. Cushman, another

23  examining physician.  For example, both Dr. Mandelbaum and Dr. Cushman found that Plaintiff

24  would have "moderate to marked impairment interact[ing]" or "difficulties getting along" with

25  supervisors, coworkers, and the public.  (AR 224, 253.)  However, the ALJ voiced no concern

26  with the terminology used by Dr. Cushman, and in fact, credited his opinion as to Plaintiff's

27  ability to perform simple, repetitive, tasks.  In any event, Dr. Mandelbaum's findings specify what

28  Plaintiff can or cannot do in work-related terms, which is all that is required.  *See, e.g.*, *Payne v.*

1    *Colvin*, No. 1:12–cv–2064 GSA, 2014 WL 1285677, at *3-*4 (E.D. Cal. Mar. 31, 2014) (holding

2    that the ALJ properly discounted a doctor's statement regarding the plaintiff's need for in-home

3    support services because the statement did not specify what the plaintiff could or could not do in

4    work-related terms).

5            The ALJ's final reason for discounting Dr. Mandelbaum's opinion—that it was

6    "inconsistent with the bulk of the medical evidence"—suffers from the same problems noted

7    above.  (AR 21.)  The ALJ did not provide his own interpretation of the evidence, let alone state

8    specifically *what* evidence conflicted with Dr. Mandelbaum's opinion.  This is insufficient.  *See*

9    *Long*, 2015 WL 971198, at *6.  While the Commissioner argues that the ALJ discounted Dr.

10   Mandelbaum's opinion because it conflicts with Plaintiff's demonstrated abilities to interact with

11   others and her conservative mental health treatment, the Court must consider only those reasons

12   actually asserted by the ALJ.  *See Orn*, 495 F.3d at 630 (noting that on appeal, the court reviews

13   "only the reasons provided by the ALJ in the disability determination").[14]  Moreover, contrary to

14   the ALJ's finding, numerous medical records and opinions support Dr. Mandelbaum's findings.

15   For example, Dr. Mandelbaum and Dr. Cushman, another examining physician, both diagnosed

16   Plaintiff with posttraumatic stress disorder and depressive disorder.  (AR 224, 252-53.)

17   Additionally, Dr. Mandelbaum and two other physicians came to the same conclusion regarding

18   Plaintiff's work impairments: (1) Dr. Cushman found that Plaintiff would have difficulty dealing

19   with workplace stressors and getting along with the public; and (2) Dr. Jacobson found that

20   Plaintiff was moderately limited in her ability to understand and remember detailed instructions,

21   carry out detailed instructions, and interact appropriately with the general public.  (AR 68-69, 224,

22

23   [14] Even if the Court were to consider the Commissioner's arguments, they would fail.  First, Dr.
     Mandelbaum found that Plaintiff had moderate to marked limitations in her ability to interact
24   appropriately with the public, supervisors, and coworkers.  (AR 224.)  In arguing that the record
     does not support this conclusion, the Commissioner points only to Plaintiff's social functioning
25   generally, rather than in the workplace.  Even so, the ALJ acknowledged that Plaintiff had
     moderate difficulties in social functioning, which is not inconsistent with Dr. Mandelbaum's
26   finding of moderate to marked difficulties.  (AR 15, 224.)  Second, Dr. Mandelbaum found that
     Plaintiff's ability to work would be chiefly limited by her chronic anxiety (AR 224), which
27   persists even when she takes medication (AR 38).

28

United States District Court
Northern District of California

253.)  Accordingly, the ALJ's conclusion that Dr. Mandelbaum's opinion was unsupported by the record is not based on substantial evidence and thus cannot serve as a specific, legitimate reason to discount his opinion.

In sum, the ALJ provided only one specific and legitimate reason for giving little weight to Dr. Mandelbaum's opinion—that his review of the record was limited.  Given that the ALJ erred in evaluating Dr. Mandelbaum's opinion in all other regards, this reason alone is insufficient.  *See Boghossian*, 2011 WL 5520391, at *4.  The ALJ's dismissal of Dr. Mandelbaum's opinion was therefore improper.

### iii.      *Examining Psychologist Dr. Cushman*

The ALJ credited Dr. Cushman's finding that Plaintiff was capable of simple, repetitive, tasks because he deemed it consistent with the record.  (AR 21.)  However, the ALJ attributed little weight to the remainder of Dr. Cushman's psychological evaluation, which concluded that Plaintiff would have difficulty attending work regularly, working a normal workday or workweek, dealing with workplace stressors, and getting along with the public.  (AR 21, 253.)  An ALJ may rely upon selected portions of a medical opinion while rejecting other parts, so long as he provides specific and legitimate reasons that are supported by substantial evidence in the record.  *See Magallanes*, 881 F.2d at 753 (holding that the ALJ's supported reliance on selected portions of a conflicting opinion constituted substantial evidence); *see also Hopkins v. Colvin*, No. 1:13–cv–00031 JLT, 2014 WL 3093614, at *11 (E.D. Cal. July 7, 2014) (finding that the ALJ properly relied on only a portion of a physician's opinion because the physician failed to support her remaining conclusions with signs or objective medical evidence).  As with the opinion of Dr. Mandelbaum, the ALJ faulted Dr. Cushman for only reviewing a limited portion of the medical record, and because Dr. Cushman's conclusions were inconsistent with both his treatment notes and the record as a whole.[15]  (AR 21.)  The Court addresses each of the ALJ's reasons for

---

[15] Plaintiff argues that the ALJ also gave little weight to Dr. Cushman's opinion because Dr. Cushman "specified that his assessment relied upon the claimant's subjective allegations and reported problems in obtaining childcare."  (AR 21.)  Although the ALJ noted this in his opinion, he did not appear to offer it as a reason for rejecting Dr. Cushman's evaluation.  Even if he had, it would not constitute a specific and legitimate reason supported by substantial evidence, as Dr. Cushman conducted a mental status exam, made his own observations, diagnosed Plaintiff, and

United States District Court
Northern District of California

1   rejecting Dr. Cushman's opinion in turn and concludes that the first reason is specific and

2   legitimate, but it is insufficient in and of itself.

3          First, the ALJ correctly noted that Dr. Cushman was not familiar with the entire record.  As

4   noted above, a physician's familiarity with the record is one factor the ALJ may consider in

5   evaluating a medical opinion.  20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).  Here, Dr. Cushman

6   reviewed Dr. Mandelbaum's report, as well as a two-page medical progress note from Mr. Geare.

7   (AR 247.)  As with Dr. Mandelbaum's opinion, Dr. Cushman's limited review of the record serves

8   as a basis for giving less weight to his opinion, but his opinion cannot be disregarded on this basis

9   alone.  *See Boghossian*, 2011 WL 5520391, at *4 (a limited review of the record is not sufficient

10  by itself to reject a physician's opinion).

11         Second, the ALJ's finding that Dr. Cushman's opinion was internally inconsistent is

12  inadequate.  As noted above, an ALJ must do more than merely "identify conflicting evidence."

13  *Long*, 2015 WL 971198, at *6.  Here, the ALJ deemed Dr. Cushman's finding that Plaintiff would

14  experience "work-preclusive limitations" inconsistent with Plaintiff's (1) reported activities of

15  daily living and (2) favorable responses to psychotherapy and psychotropic medication treatments.

16  (AR 21 (citing Exh. 4F/6-8 (AR 249-51)).)  Although the ALJ identified aspects of Dr. Cushman's

17  opinion which were purportedly inconsistent, he still did not specify which "work-preclusive

18  limitations" were inconsistent with Plaintiff's activities and response to treatment.  (*Id.*)  Rather,

19  the ALJ improperly used a blanket term to reject all of Dr. Cushman's findings.  The ALJ's

20  reasoning therefore fails for the same reason that it failed with regard to Dr. Gardner and Dr.

21  Mandelbaum.  *See Long*, 2015 WL 971198, at *6.  The ALJ's reason also fails because it is

22  improper to assume that Plaintiff would have no difficulties in a work setting simply because she

23  performs household chores or finds medication and counseling helpful.  *See Gallant v. Heckler*,

24  753 F.2d 1450, 1453 (9th Cir. 1984) (ordering award of benefits for constant back and leg pain

25  despite the plaintiff's ability to prepare meals and wash dishes).

26  _____

27  did not base his findings on Plaintiff's subjective allegations.  *See Ghanim v. Colvin*, 763 F.3d
    1154, 1162-63 (9th Cir. 2014) (finding that the ALJ improperly discounted the opinions of the

28  plaintiff's treating providers when the opinions contained their observations, diagnoses, and
    prescriptions, in addition to the plaintiff's self-reports).

United States District Court
Northern District of California

1        The ALJ also erred in rejecting Dr. Cushman's opinion as internally inconsistent based on

2   Dr. Cushman giving Plaintiff a Global Assessment of Functioning (GAF) score of 60, but still

3   finding that she would "experience significant difficulties with sustained employment."  (AR 21.)

4   In doing so, the ALJ exaggerated Dr. Cushman's findings.  Nowhere did Dr. Cushman state that

5   Plaintiff would experience *significant* difficulties working.  Rather, Dr. Cushman only opined that

6   Plaintiff would have difficulties in several work-related functions.  (AR 253.)  Further, it is not

7   clear that Dr. Cushman's findings are inconsistent with his designated GAF score.  A GAF score

8   between 51 and 60 indicates moderate symptoms (e.g. flat affect, circumstantial speech,

9   occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g.

10   few friends, conflicts with peers or coworkers).  *See Quiana La Nay Chase v. Colvin*, No. 4:13–

11   cv–01816–KAW, 2014 WL 4544096, at *3 n.5 (N.D. Cal. Sept. 12, 2014).  This is consistent with

12   Dr. Cushman's finding that Plaintiff would have difficulty getting along with supervisors,

13   coworkers, and the public.  *See Guttilla v. Astrue*, No. 09cv2259 MMA(RBB), 2010 WL 5313318,

14   at *15 (S.D. Cal. Aug. 13, 2010) (finding that an inconsistent GAF score was not a clear and

15   convincing reason for rejecting a physician's opinion because the GAF score was consistent with

16   some of the physician's assessment notes).  Because the ALJ failed to fully explain why Dr.

17   Cushman's opinion was internally inconsistent, the ALJ did not provide a specific, legitimate

18   reason to discount his opinion.  *See Long*, 2015 WL 971198, at *6.

19        Third, the ALJ erred in stating that the remainder of Dr. Cushman's opinion was

20   inconsistent with the "evidence as a whole."  (AR 21.)  Again, not only did the ALJ fail to provide

21   an interpretation of the conflicting evidence, he failed to identify specifically *what* evidence

22   conflicted with Dr. Cushman's opinion.  *See Long*, 2015 WL 971198, at *6.  What is more, Dr.

23   Cushman's opinion *was* consistent with the record as a whole, including Dr. Jacobson's opinion—

24   the only opinion that the ALJ gave significant weight to.  For instance, Dr. Cushman, Dr.

25   Jacobson, and Dr. Gardner all concluded that Plaintiff would have difficulties with regular

26   workplace attendance and working a normal workday or workweek.[16]  (AR 68-69, 253, 385-86.)

27

28   [16] Dr. Jacobson found that Plaintiff was moderately limited in her ability to: (1) perform activities
     within a schedule, maintain regular attendance, and be punctual within customary tolerances; and

United States District Court
Northern District of California

28

In addition, Dr. Cushman and Dr. Mandelbaum agreed that Plaintiff would have difficulties getting along with others in the workplace.  (AR 224, 253.)  Lastly, Dr. Cushman and Dr. Mandelbaum found that Plaintiff would have difficulty dealing with workplace stressors.  (AR 224, 253.)  Substantial evidence thus does not support the ALJ's decision in this regard.

Accordingly, only one of the ALJ's proffered reasons for rejecting the opinion of Dr. Cushman constitutes a specific and legitimate reason—that Dr. Cushman reviewed few medical records.  Given that this reason alone is insufficient to reject Dr. Cushman's opinion, the ALJ erred.  *See Boghossian*, 2011 WL 5520391, at *4.

### iv.   *Therapists Mr. Bigelman and Ms. Johnson*

Mr. Bigelman and Ms. Johnson found that Plaintiff had "marked difficulty in the areas of social, occupational and collegiate functioning" (AR 242), as well as difficulties in the "areas of interpersonal relationships, ability to trust others, self-esteem/confidence, and anxiety in stressful situations."  (AR 242-43.)

The ALJ found that the probative value of Mr. Bigelman's and Ms. Johnson's assessments was reduced because: (1) as social workers, they were not medically acceptable sources; (2) they did not provide treatment notes; and (3) their opinion was inconsistent with the record as a whole.  (AR 20.)  The Court addresses each of the ALJ's reasons in turn and concludes that the ALJ did not err because the first two reasons were proper.

The ALJ's first reason for discounting the assessments of Mr. Bigelman and Ms. Johnson—that Mr. Bigelman and Ms. Johnson were not medically acceptable sources—is proper.  The relevant SSA regulations state that "[o]nly physicians and certain other qualified specialists are considered [medically acceptable sources.]"  *Ghanim*, 763 F.3d at 1161 (internal citations and quotations omitted); 20 C.F.R §§ 404.1513(a), 404.1513(d).  Therapists and social workers do not qualify as acceptable medical sources, and thus are considered "other sources."  *See* 20 C.F.R.

---

(2) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.  (AR 68-69.)  Dr. Gardner found that Plaintiff would need to take a 20 minute unscheduled break every hour and would miss more than four days of work per month.  (AR 385-86.)

United States District Court
Northern District of California

§ 416.913(d)(1); *Stephens v. Colvin*, No. 13-cv-05156-RS, 2014 WL 6982680, at *4 (N.D. Cal. Dec. 9, 2014) (holding that "[t]estimony from a treating therapist constitute[d] an 'other source'"); *Casner v. Colvin*, 958 F. Supp. 2d 1087, 1097 (C.D. Cal. 2013) (finding that a treating licensed clinical social worker was not an acceptable medical source).  An ALJ may accord opinions from "other sources" less weight than opinions from acceptable medical sources.  *See Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996), *superseded by regulation on other grounds as noted in Hudson v. Astrue*, No. CV–11–0025–CI, 2012 WL 5328786, at *4 n.4 (E.D. Wash. Oct. 29, 2012). To completely discount the testimony of an "other source," however, an ALJ must provide "reasons germane to each witness for doing so."  *Ghanim*, 763 F.3d at 1161 (internal citations and quotations omitted).  Here, Mr. Bigelman and Ms. Johnson, as social workers and therapists, were not acceptable medical sources, and thus their opinions were not entitled to special weight, but the ALJ had to provide a germane reason to reject their opinion entirely.  *See Stephens*, 2014 WL 6982680, at *4; *see also Casner*, 958 F. Supp. 2d at 1097.

The ALJ's second reason for giving little weight to Mr. Bigelman's and Ms. Johnson's opinions—that Mr. Bigelman and Ms. Johnson failed to provide treatment notes corroborating their opinions—is also proper.  An ALJ may reject a medical or other source's opinion when there is a lack of objective medical findings, treatment notes, or rationale supporting the opinion.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (affirming the ALJ's decision to reject a treating physician's opinion because the opinion was not supported by rationale or treatment notes, and offered no objective medical findings).  Because Mr. Bigelman and Ms. Johnson did not provide treatment notes, the ALJ articulated a germane reason for discounting their assessments.  *See id.*

The ALJ's third reason for according little weight to Mr. Bigelman's and Ms. Johnson's assessments—that their opinions were inconsistent with the record—is less availing.  An ALJ may properly discredit a social worker's opinion if it is inconsistent with evidence in the record.  *See Bayliss*, 427 F.3d at 1218 (noting that "[i]nconsistency with medical evidence" is a "germane" reason for rejecting lay witness testimony); *Casner*, 958 F. Supp. 2d at 1098 (holding that the ALJ provided specific and legitimate reasons for rejecting a social worker's opinion because her

United States District Court
Northern District of California

opinion was inconsistent with four other medical opinions).  Here, the ALJ concluded that Mr. Bigelman's and Ms. Johnson's assessments were contradicted by Plaintiff's positive response to psychotropic medication treatment, her unremarkable findings on mental status examinations, and her statement that she noticed benefits from counseling sessions.  (AR 20-21 (citing Exh. 4F/8 (AR 251)).)  Not only did the ALJ fail to cite to evidence of Plaintiff's positive response to psychotropic medication and her unremarkable findings on mental status examinations, he also did not account for Plaintiff's persistent anxiety and nightmares while she was on medication (*see* AR 327, 389, 395, 403) or explain how Plaintiff's results on mental status examinations were unremarkable.  Moreover, the ALJ cited only to Dr. Cushman's evaluation—an evaluation the ALJ accorded little weight—to demonstrate Plaintiff's benefits from counseling sessions.  (*See* AR 21 (citing Exh. 4F/8 (AR 251)).)  This is problematic.  The ALJ cannot reject an opinion only to rely on it later in order to achieve a desired result—here, to discredit Plaintiff's therapists' opinion.  The ALJ thus erred in stating that Mr. Bigelman's and Ms. Johnson's opinions were inconsistent with the record.

In sum, the ALJ properly discredited Mr. Bigelman's and Ms. Johnson's opinions—even though he erred in stating that their opinions were inconsistent with the record—because he provided at least one proper reason for doing so.  *See Molina*, 674 F.3d at 1115 (noting that an ALJ's error is harmless "where the ALJ provide[s] one or more invalid reasons for disbelieving a [witness's] testimony, but also provide[s] valid reasons that were supported by the record"); *see also Stephens*, 2014 WL 6982680, at *5 (holding that the ALJ properly discounted a treating therapist's opinion because he provided one germane reason).

### v.    Non-Examining Psychological Consultant Dr. Jacobson

The only medical opinion the ALJ gave significant weight to was that of an unnamed state agency psychologist who determined that Plaintiff was able to perform simple tasks, but was moderately limited in her ability to interact appropriately with the public.  (AR 69.)  As noted above, a non-treating, non-examining physician's opinion is entitled to lesser weight than that of a treating or examining physician's opinion; the ALJ nonetheless accorded great weight to the state agency psychologist's opinion.  *See Garrison*, 759 F.3d at 1012.  The ALJ did so for three

United States District Court
Northern District of California

reasons: (1) the state agency psychologist reviewed "substantial portions" of the medical evidence; (2) the state agency psychologist's opinion was not conclusory; and (3) the state agency psychologist's findings were consistent with the record as a whole.  (AR 20.)  The ALJ's reliance on the state agency psychologist's opinion is problematic for four reasons.

First, it is unclear from the record whether Dr. Jacobson is the state agency psychologist upon which the ALJ relied.  Nowhere does the ALJ name Dr. Jacobson.  Rather, the ALJ merely refers to the "State agency psychologist" and then generally cites to the Disability Determination Explanation at the reconsideration level.  (*Id.* (citing Exh. 3A (AR 56-71)).)  This is problematic because more than one physician provided an opinion at the reconsideration level.  (*See, e.g.*, AR 65-66.)  Therefore, the Court can only guess as to which opinion the ALJ relied upon.  For purposes of this Order, however, the Court assumes that the ALJ was referring to the opinion of Dr. Jacobson.

Second, it is unclear which medical records Dr. Jacobson reviewed.  For the proposition that Dr. Jacobson reviewed "substantial portions" of the medical evidence, the ALJ cited pages that contain multiple physicians' names.  (AR 20 (citing Exh. 3A/9, 11 (AR 64, 66)).)  Because the pages that the ALJ cited do not delineate which physician reviewed which records, it is not clear that Dr. Jacobson reviewed a substantial portion of the evidence.  Even if he had, this would not be a sufficient reason in itself for according his opinion greater weight than the opinion of Plaintiff's treating physician, as he still would not have reviewed all of Plaintiff's medical records.  *See Lester*, 81 F.3d at 831 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.") (emphasis in original); *see also Tze Chiang Leung v. Colvin*, No. CV 13–1810–AS, 2015 WL 58722, at *9 (C.D. Cal. Jan. 5, 2015) ("Without having the benefit of reviewing *all* of Plaintiff's relevant medical records, the Court cannot conclude that [a nontreating, nonexamining physician's] opinion constitutes substantial evidence, let alone that it merits the 'significant weight' the ALJ afforded it . . . .") (emphasis in original).

Third, Dr. Jacobson's opinion was internally inconsistent.  The ALJ's statement that Dr. Jacobson "provided sound and specific explanations to support [his] conclusions," (AR 20 (citing

32

United States District Court
Northern District of California

1    Exh. 3A/9, 11 (AR 64, 66)), is misleading.  Indeed, Dr. Jacobson provided no explanation

2    whatsoever for several inconsistent findings.  For instance, Dr. Jacobson accorded "great weight"

3    to Dr. Cushman's opinion while at the same time stating that it was an "overestimate of the

4    severity of [Plaintiff's] restrictions [and] limitations and based only on a snapshot of [Plaintiff's]

5    functioning."  (AR 67, 70.)  Similarly, Dr. Jacobson found Plaintiff was moderately limited in her

6    ability to perform activities within a schedule, maintain regular attendance, and be punctual within

7    customary tolerances, yet ultimately concluded that she would be able to maintain regular

8    attendance.  (AR 68-69.)  Likewise, Dr. Jacobson found Plaintiff was moderately limited in her

9    ability to respond appropriately to changes in the work setting, but that she would be able to adapt

10   to routine work changes.  (AR 69.)  The ALJ thus overstated the reasonableness of Dr. Jacobson's

11   explanations and, in doing so, achieved the desired result of upholding Dr. Jacobson's opinion.

12          Fourth, the ALJ failed to include several of Dr. Jacobson's findings in Plaintiff's RFC.[17]

13   (AR 17.)  The ALJ need not incorporate every facet of a physician's opinion into the RFC.  *See* 20

14   C.F.R. § 404.1545(a)(1) (noting that ALJs consider the evidence as a whole in formulating the

15   claimant's RFC).  Nor must the ALJ "discuss *all* evidence."  *Vincent on Behalf of Vincent v.*

16   *Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (emphasis in original).  At the same time, however,

17   the ALJ is required to "explain why significant probative evidence has been rejected."  *Id.* at 1395

18   (internal citation and quotation omitted).  To the extent the ALJ accepts a physician's findings, the

19   ALJ is required to include them in his RFC.  *Van Sickle v. Astrue*, 385 F. App'x 739, 741 (9th Cir.

20   2010).  Here, the ALJ credited Dr. Jacobson's opinion in its entirety; he therefore should have

21   included all of the limitations set forth in Dr. Jacobson's opinion.  *See Schleve v. Colvin*, No.

22

23   _____

24   [17] Plaintiff further argues that the ALJ did not account for Dr. Jacobson's two hour limit in her
     ability to maintain concentration, persistence and pace.  However, Plaintiff cites no authority
25   suggesting there is any inconsistency between the ability to concentrate for two hour increments
     and the ability to sustain simple, repetitive, tasks, equating to unskilled work.  Indeed, SSA's
26   Program and Operations Manual of Systems (POMS) notes that the ability to perform *any* work
     includes the ability to work in two hour increments.  POMS § DI 25020.010(B)(2)(a) (noting that
27   *all* jobs require the ability to understand, carry out, and remember simple instructions, which
     includes the "ability to maintain concentration and attention for extended periods (the
28   approximately 2-hour segments between arrival and first break, lunch, second break, and
     departure").  "The POMS does not have the force of law, but it is persuasive authority."  *Warre v.*
     *Comm'r*, 439 F.3d 1001, 1005 (9th Cir. 2006).

1:13–cv–00563–SKO, 2014 WL 2590106, at *8-*9 (E.D. Cal. June 10, 2014) (remanding because the ALJ gave significant weight to a nonexamining physician's opinion but neither included the opinion's limitations in the plaintiff's RFC nor offered any explanation for rejecting them). However, the ALJ neither credited nor articulated reasons for rejecting Dr. Jacobson's findings that Plaintiff was moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work setting.  (AR 20, 68-69.)  The ALJ's failure to include these limitations was not harmless because the RFC may have included additional limitations, and because these additional limitations may have affected the ultimate disability determination.  *Molina*, 674 F.3d at 1115 ("[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination.").

Given that the ALJ never identified Dr. Jacobson by name, did not specify which records Dr. Jacobson reviewed, failed to account for inconsistencies between Dr. Jacobson's notes and conclusions, and ignored several of Dr. Jacobson's findings in determining Plaintiff's RFC, he erred in giving significant weight to Dr. Jacobson's opinion.

\* \* \*

In sum, the ALJ made three errors regarding Plaintiff's medical evidence.  First, he failed to provide clear and convincing reasons to discount Dr. Gardner's opinion regarding Plaintiff's physical limitations.  Second, the ALJ did not provide specific and legitimate reasons to discount Dr. Mandelbaum's and Dr. Cushman's opinions.  Third, the ALJ improperly accorded significant weight to what appears to be Dr. Jacobson's opinion, an internally inconsistent opinion of a non-treating and non-examining physician.  Given that the ALJ's entire decision was improperly predicated on Dr. Jacobson's opinion, the Court cannot conclude that any such error was harmless.

United States District Court
Northern District of California

### B.       The ALJ's Consideration of Lay Testimony

Plaintiff next asserts that the ALJ did not provide a sufficient basis to find her and her spouse's testimony not credible.  The SSA policy on determining RFC directs ALJs to give "[c]areful consideration . . . to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone."  SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).  If the record establishes the existence of an impairment that could reasonably give rise to such symptoms, the "ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect."  *Robbins*, 466 F.3d at 883; *see also Chaudhry v. Astrue*, 688 F.3d 661, 670 (9th Cir. 2012) ("Because the RFC determination must take into account the claimant's testimony regarding [her] capability, the ALJ must assess that testimony in conjunction with the medical evidence.").

#### 1.       The Standard for Assessing Credibility

The standard to determine whether a claimant's testimony is credible is different from the standard used above for rejecting a physician's testimony that is *based* on a claimant's subjective complaints.  To "determine whether a claimant's testimony regarding subjective pain or symptoms is credible," an ALJ must use a "two-step analysis."  *Garrison*, 759 F.3d at 1014.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citations and quotation marks omitted).  "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Id.* (internal citations and quotation marks omitted).

An ALJ is not "required to believe every allegation of disabling pain."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  A claimant's credibility is most commonly called into question where her complaint is about "disabling pain that cannot be objectively ascertained."  *Orn*, 495 F.3d at 637.  "In weighing a claimant's credibility, the ALJ may consider [her] reputation for truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her]

conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effects of the symptoms of which [she] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "To support a lack of credibility finding" about a claimant's subjective pain complaints, an ALJ must "point to specific facts which demonstrate that [the claimant] is in less pain than she claims." *Vasquez v. Astrue*, 572 F.3d 586, 591-92 (9th Cir. 2009) (internal citation and quotation omitted). In sum, where, as here, the ALJ does not find that a claimant was malingering, the ALJ is required to (1) specify which testimony the ALJ finds not credible, and (2) provide clear and convincing reasons supported by the record for rejecting the claimant's subjective testimony. *See Brown-Hunter v. Colvin*, No. 13–15213, 2015 WL 6684997, at *1, *5 (9th Cir. Nov. 3, 2015); *Lingenfelter*, 504 F.3d at 1036.

### 2.   Analysis

#### a.   Plaintiff

Applying the two-step analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the type of alleged symptoms," but Plaintiff's testimony "concerning the intensity, persistence and limiting effects of these symptoms" was not credible "to the extent inconsistent with the residual functional capacity [assessment.]" (AR 17.)

The ALJ analyzed four factors when evaluating Plaintiff's subjective complaints: Plaintiff's (1) unremarkable results on mental status examinations and physical examinations; (2) failure to comply with her treatment regimen despite her positive response to it; (3) inconsistent statements regarding her past substance abuse; and (4) daily activities. The Court addresses each of these factors in turn and concludes that the ALJ erred with regard to the first and second factors.

#### i.   *Unremarkable Results on Examinations*

The ALJ discredited Plaintiff's testimony because it lacked support from her examination findings. He explained: Plaintiff's "allegations of disabling psychological symptoms and work-preclusive limitations associated with her mental impairments lack support from mental status examination findings by evaluating sources." (*Id.*) He further concluded that "the balance of the medical evidence does not substantiate [Plaintiff's] allegations of work-preclusive limitations

1    associated with her physical impairments."  (AR 19.)  The ALJ's reasoning suffers from two

2    defects.

3         First, the ALJ failed to identify *which* testimony he found not credible.  In *Brown-Hunter*

4    *v. Colvin*, the Ninth Circuit recently held that where an ALJ made a similar "conclusory

5    statement"—that Plaintiff's "statements concerning the intensity, persistence, and limiting effects

6    of these symptoms are not credible to the extent they are inconsistent with the above residual

7    functional capacity assessment"—the ALJ was required to specifically identify which of the

8    plaintiff's statements she found incredible and why.  The ALJ erred because she found "based on

9    unspecified claimant testimony and a summary of medical evidence, that 'the functional

10   limitations from claimant's impairment were less serious than she alleged.'"  *Brown-Hunter*, 2015

11   WL 6684997, at *5; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he ALJ

12   must identify what testimony is not credible and what evidence undermines the claimant's

13   complaints.") (internal quotation marks and citation omitted).  The ALJ here likewise failed to

14   specifically identify which of Plaintiff's statements he found incredible.  While the ALJ

15   summarized the medical findings at length, he completely failed to discuss Plaintiff's testimony,

16   including her testimony that she feels anxious and has nightmares even when she takes medication

17   (AR 35, 37-38), that she has trouble standing and sitting due to pain throughout her body (AR 39-

18   40), and that she does not believe she could work eight hours a day (AR 37).  The ALJ's rejection

19   of Plaintiff's testimony was thus in error.  *See Brown-Hunter*, 2015 WL 6684997, at *5.

20        Second, the ALJ summarized the medical evidence supporting his disability determination,

21   but ignored the medical evidence contradicting that determination.  *See Cotton v. Astrue*, 374 F.

22   App'x 769, 773 (9th Cir. 2010) (holding that an "ALJ's cherry-picking of [claimant's] histrionic

23   personality out of her host of other disorders is not a convincing basis for the adverse credibility

24   finding"); *see also Williams v. Colvin*, No. ED CV 14–2146–PLA, 2015 WL 4507174, at *6 (C.D.

25   Cal. July 23, 2015) ("An ALJ may not cherry-pick evidence to support the conclusion that a

26   claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability

27   determination.").  For instance, the ALJ completely ignored Dr. Mandelbaum's mental status

28   examination, which found that Plaintiff teared up while discussing her past, appeared anxious, and

37

1   had problems with concentration.  (AR 223-24.)  Moreover, the ALJ ignored Plaintiff's severe

2   fibromyalgia symptoms while she was taking her medication on August 31, 2012 (AR 327) and

3   waiting for her insurance to cover her medication on October 25, 2012 (AR 322).  Therefore, the

4   ALJ's rejection of Plaintiff's testimony was in error.  *See Brown-Hunter*, 2015 WL 6684997, at

5   *5.

6        The ALJ thus failed to cite clear and convincing reasons supported by substantial evidence

7   to undermine Plaintiff's assertions related to her mental status and physical examination findings.

8        *ii.*        ***Refusal to Follow Medical Treatment***

9        Next, the ALJ discredited Plaintiff's testimony because Plaintiff refused to follow

10  prescribed treatment options.  An "ALJ may properly rely on unexplained or inadequately

11  explained failure to seek treatment or to follow a prescribed course of treatment."  *Molina*, 674

12  F.3d at 1113 (internal quotation marks and citation omitted); *see also* 20 C.F.R. §§ 404.1530(b),

13  416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find

14  you disabled . . . .");  SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) ("[T]he individual's

15  statements may be less credible if . . . the medical reports or records show that the individual is not

16  following the treatment as prescribed and there are no good reasons for this failure.").  "In the case

17  of a complaint of pain, such failure may be probative of credibility, because a person's normal

18  reaction is to seek relief from pain, and because modern medicine is often successful in providing

19  some relief."  *Orn*, 495 F.3d at 638.  However, "[w]here a claimant provides evidence of a good

20  reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for

21  not doing so."  *Smolen*, 80 F.3d at 1284; *see also* 20 C.F.R. §§ 404.1530(c), 416.930(c); SSR 96-

22  7p, 1996 WL 374186, at *8.

23       Here, the ALJ first focused on Plaintiff's medication for her mental impairments.  The ALJ

24  explained: Plaintiff's "allegations of work-preclusive limitations secondary to her psychological

25  impairments are also inconsistent with her course of treatment and her response thereto."  (AR

26  18.)  Though the record contains some examples of Plaintiff refusing to follow her prescribed

27  treatment, the ALJ's reasoning is in error because he did not link Plaintiff's testimony to any such

28  examples.  *See Brown-Hunter*, 2015 WL 6684997, at *6.  As a result, the ALJ not only ignored

United States District Court
Northern District of California

Plaintiff's testimony that she was currently taking medication for anxiety and depression, but that her anxiety and insomnia persist even when she complies with her treatment regimen.  (AR 33, 35, 37-38.)  The ALJ thus erred.  *See Garrison*, 759 F.3d at 1017 ("[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

The ALJ then focused on Plaintiff's treatment regimen for her fibromyalgia.  He opined: "the favorable response to treatments do not substantiate [Plaintiff's] allegations of disabling pains."  (AR 18.)  Although the ALJ acknowledged that Plaintiff could not take Lyrica for her fibromyalgia once she became pregnant in 2013 (AR 19), the ALJ found that Plaintiff would not suffer from work-preclusive limitations for 12 months or longer because her functionality, when no longer pregnant, would "improve to its previous level due to her past favorable response to Lyrica."  (*Id.* (citing Exh. 12F (AR 389-412)))  The ALJ erred because, just as he did with Plaintiff's examination findings, he summarized the medical evidence supporting his determination, but ignored the medical evidence contradicting that determination.  *See Cotton*, 374 F. App'x at 773; *see also Williams*, 2015 WL 4507174, at *6.  For example, the ALJ ignored Plaintiff's severe fibromyalgia symptoms while she was taking her medication on August 31, 2012 (AR 327) and waiting for her insurance to cover her medication on October 25, 2012 (AR 322). The ALJ's rejection of Plaintiff's testimony due to her failure to take medication was thus in error. *See Brown-Hunter*, 2015 WL 6684997, at *5.

The ALJ thus failed to cite clear and convincing reasons supported by substantial evidence to undermine Plaintiff's assertions regarding adherence to her treatment regimen.

### iii.     Past Substance Abuse

The ALJ also rejected Plaintiff's testimony because she made multiple inconsistent statements regarding her past substance abuse.  (AR 19.)  An ALJ may rely on conflicting statements by a claimant, including statements regarding a claimant's alcohol or substance abuse, to reject a claimant's testimony.  *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ's finding, based on substantial evidence in the record, that the claimant did not reliably account for her drug and alcohol usage supported the ALJ's negative credibility determination).

United States District Court
Northern District of California

1    Here, Plaintiff stated that she had not used methamphetamine in nine years on June 7, 2011; that

2    she last used methamphetamine in 2010 on May 21, 2012; and, again on May 21, 2012, that she

3    used methamphetamine in 2011.  (AR 19 (citing Exhs. 1F/3, 4F/6, 4F/8 (AR 221, 249, 251)).)

4    The ALJ thus cited clear and convincing reasons supported by substantial evidence to undermine

5    Plaintiff's assertions related to her past substance abuse.  *See Brown-Hunter*, 2015 WL 6684997,

6    at *5.

7            ***iv.      Daily Activities***

8            Lastly, the ALJ discredited Plaintiff's testimony because she described daily activities that

9    are not as limited as one might expect for a disabled individual.  (AR 19.)  "Inconsistencies

10   between a claimant's testimony and the claimant's reported activities provide a valid reason for an

11   adverse credibility determination."  *Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014).

12   While "[o]ne does not need to be utterly incapacitated in order to be disabled," *Vertigan v. Halter*,

13   260 F.3d 1044, 1050 (9th Cir. 2001) (internal citation and quotation marks omitted), here the ALJ

14   identified a long list of activities that Plaintiff still performs.  Specifically, the ALJ noted that

15   Plaintiff drives, performs household chores, grocery shops, performs personal care tasks without

16   assistance, and prepares full meals.  (AR 19.)  What is more, Plaintiff failed to identify activities in

17   which her performance is significantly impacted.  Although she testified that she has trouble

18   sitting and standing (AR 39-40), she testified that she does not nap during the day (AR 37) and she

19   indicated in her function report that she cares for two boys (presumably her son and nephew) (AR

20   171).  The ALJ therefore cited clear and convincing reasons supported by substantial evidence to

21   undermine Plaintiff's assertions related to her activities of daily living.  *See Brown-Hunter*, 2015

22   WL 6684997, at *5; *see also Kelly v. Astrue*, 471 F. App'x 674, 677 (9th Cir. 2012) (holding that

23   the ALJ properly made an adverse credibility finding because, in part, the plaintiff's daily

24   activities included driving, washing the dishes, shopping, and caring for her two children).

25           In sum, the ALJ provided clear and convincing reasons supported by substantial evidence

26   to find Plaintiff's subjective reports associated with her past substance abuse and daily activities

27   less than credible.  But the ALJ failed to cite clear and convincing reasons supported by

28   substantial evidence to undermine Plaintiff's assertions related to her mental status and physical

United States District Court
Northern District of California

examination findings, as well as her adherence to her treatment regimen.  Accordingly, the ALJ erred in finding less than credible Plaintiff's testimony associated with two of four factors.  On balance, the ALJ erred in assessing Plaintiff's credibility given the Ninth Circuit's requirement that ALJs specifically identify which of the plaintiff's statements they find incredible and why. *See Brown-Hunter*, 2015 WL 6684997, at *5.

### b.   Plaintiff's Spouse

Next, the ALJ found Plaintiff's spouse's testimony not credible because his "allegations regarding [Plaintiff's] restrictions to performing day-to-day activities [were] even more limiting than those reported by [Plaintiff]."[18]  (AR 20.)  Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence.  *See Molina*, 674 F.3d at 1114 (ALJ must "consider testimony from family and friends submitted on behalf of the claimant").  To discount lay witness testimony, an ALJ must give "specific reasons germane to each witness."  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999).  Here, although the ALJ could have provided more details in discounting Plaintiff's spouse's testimony, he need only provide a germane reason.  The ALJ did just that, and thus did not err in discounting Plaintiff's spouse's testimony.

In sum, the ALJ erred in assessing Plaintiff's, but not Plaintiff's spouse's, credibility.

*   *   *

Given that the ALJ's consideration of the medical evidence and adverse credibility finding of Plaintiff are not supported by substantial evidence, the Court finds error in Plaintiff's RFC. Because this error goes to the heart of the disability determination, it is not harmless.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless if it is inconsequential to the ultimate nondisability determination," or "if the agency's path may reasonably be discerned"); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently

---

[18] The ALJ also found the testimony of Plaintiff's sister, Lynda-Nicole Swenney, not credible due to its similarity to Plaintiff's testimony.  (AR 20.)  As Plaintiff does not dispute this part of the ALJ's opinion, the Court instead focuses on Plaintiff's spouse's testimony.

United States District Court
Northern District of California

1    conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a

2    different disability determination.").

3        Because the Court concludes that the ALJ's analysis at step four was in error, the Court

4    need not consider Plaintiff's additional argument that the ALJ also failed to meet his burden at

5    step five.  As discussed below, the Court concludes that this case must be remanded for further

6    proceedings.

7    **III.   THE SCOPE OF REMAND**

8        Plaintiff asks the Court to remand for immediate benefits under the credit-as-true rule.

9    Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare

10   circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v.*

11   *Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).  However, a court may remand for an immediate

12   award of benefits where "(1) the record has been fully developed and further administrative

13   proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient

14   reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the

15   improperly discredited evidence were credited as true, the ALJ would be required to find the

16   claimant disabled on remand." *Garrison*, 759 F.3d at 1020.  Each part of this three-part standard

17   must be satisfied for the court to remand for an award of benefits, *id.*, and "[i]t is the 'unusual

18   case' that meets this standard." *Williams v. Colvin*, No. 12–CV6179, 2014 WL 957025, at *14

19   (N.D. Cal. Mar. 6, 2014) (quoting *Benecke*, 379 F.3d at 595).  Moreover, if "an evaluation of the

20   record as a whole creates serious doubt that a claimant is, in fact, disabled," a court should remand

21   for further proceedings "even though all conditions of the credit-as-true rule are satisfied."

22   *Garrison*, 759 F.3d at 1021; *see also Treichler*, 775 F.3d at 1106 ("[A] reviewing court is not

23   required to credit claimants' allegations regarding the extent of their impairments as true merely

24   because the ALJ made a legal error in discrediting their testimony.").

25       Because the record here creates serious doubts as to whether Plaintiff is in fact disabled,

26   the Court need not reach the credit-as-true rule and must remand for further proceedings instead.

27

28

United States District Court
Northern District of California

1

**CONCLUSION**

2        For the reasons stated above, the Court GRANTS IN PART Plaintiff's Motion for

3   Summary Judgment (Dkt. No. 17) and DENIES Defendant's Cross-Motion for Summary

4   Judgment (Dkt. No. 18).  The Court VACATES the ALJ's final decision and REMANDS for

5   reconsideration consistent with this Order.

6

7        **IT IS SO ORDERED.**

8   Dated: December 14, 2015

9

10

11   JACQUELINE SCOTT CORLEY
     United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

43